**WIXOM et al. v. BOWERS et al.**

**No. 11191.**

Court of Civil Appeals of Texas. Galveston.

May 22, 1941.

Rehearing Denied June 19, 1941.

Leon Jaworski, E. H. Suhr, Joe R. Greenhill, and Chas. W. Bell, all of Houston (Fulbright, Crooker, Freeman & Bates, and Bryan, Suhr, Bering & Bell, all of Houston, of counsel), for appellants.

O. Strother Simpson, W. P. Hamblen, and Fountain, Cox & Sandlin, all of Houston (Donald Campbell, Victor C. Mieher, L. A. Thompson, Jr., and Harry D. Page, all of Tulsa, Okl., of counsel), for appellees.

MONTEITH, Chief Justice.

This is an action in trespass to try title brought by appellants, Harriet Husted Wixom et al., plaintiffs in the trial court, against appellees, John Bowers et al., defendants below, for the title to and possession of certain land in the George Ayres Survey in Harris County, Texas, and for damages for the removal of oil and gas therefrom.

Appellees answered by general denials, general demurrers and pleas of not guilty. They interposed limitation pleas under the 3, 5, 10 and 25 year statutes of limitation, as well as pleas of 2 and 4 year limitation.

Appellees, Stanolind Oil & Gas Company and Amerada Petroleum Corporation, further pled improvements in good faith and the payment of taxes and expenses incidental thereto. They sought affirmative relief by way of cross-action in trespass to try title, alleging limitation title in themselves under the 3, 5, 10 and 25 year statutes of limitation not only as to the land sued for by appellants, but also for additional tracts in the said George Ayres Survey.

Judgment was rendered by the trial court in conformity with a jury's verdict, consisting of answers to 44 special issues submitted, that appellants take nothing as to the title and possession of the land sued for by them and in favor of appellees Stanolind Oil & Gas Company and Amerada Petroleum Corporation on their cross-action against all cross-defendants for a 7/8 working interest in and to all the oil, gas and mineral leasehold estates in and to the land sued for and against certain disclaiming cross-defendants, other than appellants, as to additional tracts of land out of the said George Ayres Survey.

The land involved in the suit is Lots Nos. 2 and 3, aggregating approximately 44 acres of what is known as Satsuma Orange Farms, a subdivision of the George Ayres

Survey in Harris County. The George Ayres Survey, containing approximately 483 acres of land, was located in 1862 under a certificate for 640 acres of bounty land issued by the Republic of Texas to George Ayres on November 15, 1837. The remaining 137 acres under said 640-acre certificate, which is not involved in this suit, was located in another part of Harris County. The certificate on which appellants base their claim to the land in controversy was filed for record in the deed records of Harris County on September 3, 1938. It shows transfers on its reverse side from George Ayres, the original grantee, to Rodney Wheeler, dated November 13, 1837, and from Asa Wheeler, administrator of the estate of Rodney Wheeler, deceased, to Lott Husted, his heirs or assigns, dated May 14, 1838. Said certificate was presented for registration and approval to the Commissioner of Claims of the State of Texas by one Ben Roper as a representative of Hiram W. Brown, who claimed to be the owner thereof, on June 1, 1861. Field notes of the 483-acre survey, of which the land in controversy is a part, were filed in the General Land Office at Austin by Will Bowers, a surveyor in June, 1862. Patent covering said 483 acres of land was granted to George Ayres, his heirs or assigns, on June 15, 1862.

Appellants, with the exception of R. E. Beamon, who claims under mineral leases covering the land in controversy and mineral deeds covering an undivided interest therein from the other appellants, claim the land in controversy as collateral heirs of Lott Husted, who never married and who died in Washington County, Texas, on December 18, 1840.

Appellees offered in evidence, as their asserted record title to the land in controversy, the following muniments of title:

Patent from the State of Texas to George Ayres, dated June 15, 1862.

Deed from Cecelia Beauvaris to Jacob Schroeder, dated July 1, 1898, purporting to convey 300 acres of land out of the southern portion of the George Ayres Survey.

Release of a vendor's lean retained in above deed.

Deed from Jacob Schroeder and wife to B. F. Abbott, dated April 7, 1900, conveying said 300 acres of land.

Judgment, dated November 3, 1904, in case of B. F. Abbott v. George Ayres et al., covering said 300 acres of land.

Deed from B. F. Abbott and wife to F. J. DeMerritt, dated January 19, 1905, conveying said 300 acres of land.

And other instruments under which they claim title under a regular chain of mesne conveyances from B. F. Abbott and F. J. DeMerritt into themselves.

The record shows occupation of the land in controversy under improvements and possession thereof by the said B. F. Abbott.

It was stipulated by the parties on the trial of the case that the evidence is undisputed that neither Ralph Johnson, Frances Bullimore, R. Bullimore, and Emma, Thomas, Jesse, Charles and Louis Buillimore, Rosa Belle Mansfield, B. F. Abbott, nor F. J. DeMerritt, appellees' predecessors in title, had any actual knowledge of the claim of Lott Husted or his heirs at the time of each of their respective purchases of the property in controversy and that R. Bullimore, F. J. DeMerritt, B. F. Abbott and Ralph Johnson each paid a valuable consideration for the title purported to have been conveyed to each respectively.

The jury found in answer to special issues Nos. 1, 2, and 3 that Lott Husted, to whom the George Ayres certificate was transferred, was the son of David and Hannah Mead Husted, under whom appellants claim title to the land in controversy, and that he was the same Lott Husted who died December 18, 1840, whose estate was administered in Washington County and that he owned the George Ayres certificate at the time of his death. In answer to special issue No. 10 it was found that it was more reasonably probable that Lott Husted's administrator transferred said certificate than that he did not, and in answer to special issue No. 14 that Lott Husted's administrator transferred the George Ayres certificate. It was found, however, in answer to special issues Nos. 13 and 15 that it was more reasonably probable that Lott Husted's administrator had not transferred said certificate to either Will Powers or Hiram W. Brown. It found in favor of appellees in answer to special issue No. 32 that appellees had had peaceable and adverse possession of the land in controversy for a period of five years after January 1, 1923.

It has long been the settled law of this state that in an action in trespass to try title, plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of the title of his opponent. The burden is upon him to prove

a prima facie right of title and possession; if he fails to discharge that burden he cannot recover, and where defendants are shown to be in possession of the land in controversy, as in the instant case, judgment must be entered in their favor. This is true even though defendants may have specially pled a title which they have failed to establish, for the reason that the plaintiff is not entitled to recover unless his ·own title has been affirmatively proven. Reese v. Cobb, 105 Tex. 399, 150 S.W. 887; Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902; Pena v. Frost National Bank, Tex.Civ.App., 119 S.W.2d 612; Tate v. Johnson, Tex.Civ.App., 140 S.W.2d 288.

The jury found in answer to special issue No. 14 that Lott Husted's administrator had transferred the George Ayres certificate and in answer to special issue No. 10 that it was more reasonably probable that said administrator had transferred said certificate than that he had not. In other words, the jury found that appellants had pled a title which they had failed to establish.

■ It is the established law in this state that under certain circumstances the law indulges the presumption of a conveyance to one who has been in the possession or occupation of land for a number of years where the parties claiming such presumption have, during such period, openly and notoriously claimed and exercised such acts of ownership over the land in question as might reasonably be expected from the owners thereof, with the acquiescence of adverse claimants, where the circumstances in evidence, taken in their entirety, are consistent with the presumption sought to be indulged and it is more reasonably probable that the facts sought to be proved existed than that they did not exist. Under such a state of facts the jury is at liberty to presume the execution of a conveyance and to find accordingly. Duke v. Houston Oil Co., Tex.Civ.App., 128 S.W.2d 480, writ refused; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818, writ refused.

■ It is further held that the presumption of a title is generally one of fact and not of law, and therefore subject to rebuttal. 2 Tex.Jur. 26.

In the instant case the record shows numerous facts which would justify the jury in finding that Lott Husted's Administrator had transferred said certificate or in presuming that it was more reasonably probable than not that he had done so.

There were four 640-acre bounty certificates listed among the assets of Lott Husted's estate, though none were shown to have been listed in the name of George Ayres.

One A. Moore is shown to have been a witness to the transfer of said certificate from Asa Wheeler, administrator, to Lott Husted. A. Moore attended Lott Husted in his last illness and filed a claim against his estate. He also acted as appraiser of the Lott Husted estate. In the event the jury found him to be the same person, it is probable that he was familiar with the status of said certificate and that he would be instrumental in seeing that it was transferred by Lott Husted's administrator if it was, in fact, an asset of said estate.

■ Under above facts, we think that the jury was fully justified in answering special issues Nos. 10 and 14 that the administrator had transferred the George Ayres certificate and that it was more reasonably probable than not that Lott Husted's administrator had transferred such certificate.

■ Further, the probate proceedings in the estate of Lott Husted, deceased, shows a sale of all land certificates inventoried in the estate, including four 640-acre bounty certificates. After the lapse of 100 years these proceedings must be held to establish as a matter of law the sale of the George Ayres 640-acre bounty certificate, since it is presumed that the administrator did his duty, and as held in the case of Moore v. Wooten, Tex.Com.App., 280 S.W. 742, 746: "This inventory prima facie describes and identifies all the property belonging to the estate, though this prima facie fact is subject to be assailed by any one having an interest in the subject-matter, either by showing that property contained in the inventory does not belong to the estate either in whole or in part, or that property belonging to the estate has not been included in the original inventory. In the absence of such proceeding, according to section 121 of the Act of August 15, 1870, the inventory originally filed is prima facie a true and perfect inventory of all property belonging to the estate. * * * We have seen that the law makes it the duty of the administrator to inventory all of the property belonging to the intestate. The law presumes that this duty was discharged by the administratrix in this case; no direct attack having been made upon it. * * * These are the facts proven by the

proceedings duly entered of record, and therefore left no room for any presumption at variance with the legal effect of such facts."

While we think that the court was fully authorized to render judgment in favor of appellees under the jury's answers to special issues Nos. 10 and 14, we think that his position is further strengthened by the fact that appellees have, under the record in this case, proved a record title in themselves to the land in controversy under the judgment in the case of Abbott v. George Ayres et al., in the district court of Harris County, Texas.

Appellants contend that appellees having exhibited a record title, one link of which, the judgment in the case of Abbott v. Ayres et al. is alleged to be wholly void and subject to collateral attack, they cannot now successfully assert and rely upon any presumed transfer of the George Ayres certificate. This contention cannot be sustained.

■ The courts of this state have uniformly held that if the judgment in a case recites due process of service, or other facts which would give the court jurisdiction, such recitation, in a collateral proceeding, imports absolute verity thereto.

■ The precise question raised by appellants has been decided by the Commission of Appeals in the case of Chapman v. Kellog, 252 S.W. 151, 159, in which it was held that strangers to a trespass to try title judgment will not be permitted to collaterally attack the recitals in the judgment of due service on unknown heirs. In its opinion the court said: "It will be observed that most of these objections relate to failure of proper service upon these unknown heirs. In their brief in the Court of Civil Appeals, counsel for Chapman do not seek to justify the exclusion of this judgment upon any other ground than the fact that the papers in the case show a failure to comply with the requirements of the law as to service by publication upon unknown heirs. This contention of counsel cannot be sustained. This is a collateral attack upon a judgment of a court of competent jurisdiction. The judgment on its face recites due and legal service of citation. These recitals in the judgment in collateral attack cannot be contradicted by other portions of the record. The judgment in this respect imports absolute verity. * * * It follows, from what we have said, that we

think the trial court erred in looking to the papers in the case in Hardin county, other than the judgment itself, to contradict the recitals in the latter."

The rule laid down in the Chapman case has been followed in this state by an unbroken line of authorities, including the following: Switzer v. Smith, Tex.Com. App., 300 S.W. 31, 68 A.L.R. 377; Avant v. Broun, Tex.Civ.App., 91 S.W.2d 426; Pure Oil Co. v. Reece, 124 Tex. 476, 78 S. W.2d 932; Levy v. Roper, 113 Tex. 356, 256 S.W. 251.

■ The latest expression on this question is the opinion by the Supreme Court in the case of Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865, 870, wherein it is said: "Plaintiff's attack on the Van Auken judgment is a collateral one. The rule is well settled in this State that where a proceeding is instituted to vacate and set aside a judgment, the parties to the judgment must be made parties to such proceeding, and unless that is done the attack is necessarily a collateral one. [Citing authorities.] * * * The judgment introduced in evidence by the plaintiff expressly recited that the defendant had been duly cited to appear and answer in the case. It was stated by this court in the case of Pure Oil Co. v. Reece, supra (124 Tex. 476, 78 S.W. 2d 934), 'It is the settled law of this state that where a judgment is collaterally attacked, plain jurisdictional recitals * * * must be accorded absolute verity.' That, notwithstanding, the citation served upon Mrs. Van Auken, was sufficient to apprise her of the nature of plaintiff's cause of action, both as to the notes and for the foreclosure of the deed of trust."

The judgment in the case of Abbott v. Ayres et al. recites: "* * * plaintiff appeared in person and by attorney and the defendants appearing by Lock McDaniel, their attorney, who had been duly appointed by the Honorable Court for a previous term of this court to represent the said defendants cited by publication, and all parties having announced ready for trial and no jury having been demanded by either plaintiff or defendants, the court proceeded to hear and determine the said cause, and having heard the evidence and argument of counsel, and it appearing to the court that the defendants had been duly cited as required by law, and the court being of the opinion that the law and the facts are for the plaintiff it is so ordered * * *."

Appellants introduced certain original papers in the suit showing irregularities in the publication of citation against defendants cited by publication. Under above authorities, the recitation of due service in the judgment proper is conclusive upon such matter and may not be contradicted by other facts, whether appearing in the record or aliunde. This is particularly true in view of the fact that it is undisputed that the district court of Harris County, in which said suit was brought, had jurisdiction thereof, and it is conceded by appellees in their brief that their attack on the Abbott v. Ayres judgment is a collateral one.

Appellants contend that there is no evidence of adverse possession by appellees and those under whom they claim for any consecutive five-year period between January 1, 1923, and the date of the filing of this suit. They further contend that, even if there should be found to be evidence of such adverse possession, it being undisputed that there was no payment of drainage district taxes by appellees or their predecessors in title for any consecutive five-year period on that portion of the land in controversy lying within Drainage District No. 11, appellees could acquire no title thereto under the five-year statute of limitation.

The evidence before the court in reference to adverse possession by appellees involves a fact question on the issue of R. Bullimore's possession through his tenant during the time inquired about. The jury having found, on what we deem to be sufficient evidence, that appellees and those through whom they claimed title had had peaceable and adverse possession of the land in controversy, either in person or through tenants, for a period of five years between January 1, 1923, and the date of the filing of this suit, this court is bound thereby, in the absence of a showing of facts which would defeat appellees' limitation title.

As to the payment of taxes, the record shows that Harris County Drainage district No. 11 was established in 1922 and that 23.94 acres of said Lots 2 and 3 of Satsuma Orange Farms are embraced within the boundaries of said district but that, through an error in the office of the tax assessor of Harris County, the property in controversy was not shown on the Drainage District books to be within the district. The property was not assessed for drainage district taxes and statements sent to the owners of said property did not include said drainage district taxes until the year 1939, and that all taxes due on the property in controversy were paid each year before they became delinquent, with the exception of said drainage district taxes, which were not paid prior to 1939.

It is the contention of appellees that the payment in full before delinquency of the taxes assessed against the property and demanded by the tax collector as due thereon and all taxes reasonably believed by them to be owing on the property constitutes a compliance with the taxpaying requirement under the five-year statute of limitation, Vernon's Ann.Civ.St. Art. 5509, and that the application of the statute is not precluded by the failure of the tax assessor to include a drainage district tax on their assessment. This contention must be sustained.

It is stated in 61 Corpus Juris 961, par. 1237, that: "It is a general rule that where a property owner in good faith applies to the proper officer for the purpose of paying his taxes, and such payment is frustrated by the mistake, negligence, or other faults of the officer, the attempt to pay is equivalent to actual payment."

This rule is substantially followed in the case of Henning v. Wren, 32 Tex.Civ.App. 538, 75 S.W. 905, 910, writ of error refused, 97 Tex. 636, in which it is held: "* * * we do not believe, where a grantee in a recorded deed pays on the number of acres called for in his conveyance, actually believing that he is paying for the full quantity in his possession, that he should be deprived of the benefit of the statute, because it may subsequently be ascertained that his tract is somewhat larger than he believed it to be."

This court has followed the rule laid down in the case of Henning v. Wren, supra, in the case of Starkey v. McNay, Tex.Civ.App., 103 S.W.2d 1051, 1054, wherein Justice Graves, speaking for the court, in his opinion says: "Contra to the quoted findings against the consecutive payment of taxes, this court finds that the appellant, by paying taxes on 52 acres of the Preston survey, that being the acreage called for by his deed from the 'Ross Properties,' complied fully with the requirement of the five-year statute of limitation with reference to the payment of taxes upon the entire 73.4 acres embraced within the metes and bounds description of such

deed, inclusive of the 1.52 acres in controversy."

Appellants further contend that the statutes of limitation were suspended under R. S. Article 5538 during the various periods between January 1, 1923, and the date of the filing of this suit, due to the death of appellants' predecessors in title. This contention cannot be sustained.

It is the general rule in this state that when a defendant pleads limitation to a cause of action, it is incumbent upon the plaintiff to plead facts showing that he is within one of the exceptions to the statute. Lewis v. Saylors, Tex.Civ.App., 37 S.W.2d 760; Price v. Powell, Tex.Civ. App., 57 S.W.2d 1121; Smith v. Bradshaw, Tex.Civ.App., 93 S.W.2d 468; United States Royalty Association v. Stiles, Tex. Civ.App., 131 S.W.2d 1060; Note, 115 A.L. R. 755, 766; 28 Tex.Jur. 294 et seq.

Appellees specifically pled the various statutes of limitation in their second amended original answer as a bar to recovery by appellants. Since no pleas of disability of any kind tolling the statutes of limitation were set up by appellants, they cannot now avail themselves of these defenses.

We have carefully considered all other assignments and propositions presented in appellants' brief. None of them, in our opinion, show any error in the record which requires a reversal of the judgment. It follows that the judgment of the trial court must be in all things affirmed. It is so ordered.

Affirmed.